Staked Plains Trust, Limited, Henry F. Whitney, Hugh R. Partridge and William F. Feeney, Trustees v. Commissioner.
Staked Plains Trust, Ltd. v. Commissioner
Docket No. 109202.
United States Tax Court
1943 Tax Ct. Memo LEXIS 164; 2 T.C.M. (CCH) 566; T.C.M. (RIA) 43381; August 5, 1943
*164 J. P. Jackson, Esq., P. B. Randolph, Esq., and W. G. Peavy, C.P.A., 711 Santa Fe Bldg., Dallas, Tex., for the petitioner. Sam G. Winstead, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves deficiencies in income and excess-profits tax for the year 1937 in the amounts of $12,695.76 and $3,013.23, respectively. In its petition, petitioner claimed an over payment of $729.68 and assigned numerous errors arising from respondent's adjustments. The parties have resolved the majority of their differences by abandonment or agreement and effect will be given thereto in the recomputation under Rule 50. Remaining in controversy are the following issues: (1) Is the sum of $29,750 accrued by petitioner as interest on its Liquidation Rights (Class B) deductible as interest on indebtedness under section 23 (b) of the Revenue Act of 1936? (2) If the first question be answered in the negative, is petitioner entitled to a dividends paid credit by reason of its payment of $72,293.78 on Liquidation Certificates (Class A)? (3) For the purpose of computing surtax on undistributed profits, is petitioner entitled to a credit in the full amount *165 of its adjusted net income under section 26 (c) (1) of the Revenue Act of 1936, the amendment to section 26 (c) as provided by section 501 (a) (2) of the Revenue Act of 1942 or section 26 (f) as added by section 501 (a) (3) of the Revenue Act of 1942? The case was submitted upon oral testimony, documentary evidence and a stipulation of facts which we adopt and incorporate herein by reference. Petitioner's tax returns were filed with the collector of internal revenue for the second collection district of Texas at Dallas on an accrual basis of accounting. Findings of Fact Texas Prairie Lands, Ltd., a Canadian corporation, now wholly owned by petitioner, was organized in 1912. It acquired 60,000 acres of unimproved Texas land for the purpose of development and resale thereof in small tracts. On November 20, 1912, it issued First Mortgage Six Per cent Five-Year Bonds in the sum of [*] 500,000 ($2,433,333.33) and on December 12, 1914, it issued Prior Lien Notes in the sum of $500,000, both issues being secured by mortgages on the land. The Five-Year Bonds were subordinated to the Prior Lien Notes. The noteholders also became owners of three classes of Profit Sharing Certificates. *166 Petitioner is a trust and was formed under a declaration of trust dated December 12, 1914, to take over and manage, operate and develop the property. The beneficial interest in petitioner's assets was divided into 35,000 shares, all of which were issued to Texas Prairie Lands, Ltd. and immediately deposited as additional security for the payment of the Five-Year Bonds. Petitioner also assumed the corporation's above mentioned liabilities. The declaration of trust authorized petitioner's trustees to borrow money for the purposes of the trust, to place a floating charge upon its assets, and to issue shares in addition to the original 35,000. Such new shares might be issued as preferred or common; for money, property or in payment of liabilities; and could contain any preferences or advantages which the trustees, in their discretion, might designate. The trustees also were given the power "To employ such agents as they shall think proper for the sale or management of any of the said property or in conducting the business of the said trusts * * *." The shareholders were given no right to any distribution except when and as declared by the trustees. Every shareholder was given one vote *167 for each share held by him. The duration of petitioner was declared to be 13 years, after which its assets were to be converted into money and, after the discharge of debts, apportioned among the shareholders. In September 1916 petitioner borrowed $100,000 on a note due in December of the same year, which sum was used in the operation and development of the 60,000 acres as had been the funds borrowed by the corporation. To secure further financial aid for the enterprise, a second trust, Prairie Lands Trust, Ltd., was formed under indenture dated December 1, 1916. Petitioner thereupon transferred to it certain contracts of purchase and vendor's lien notes, promised to convey additional assets, guaranteed payment of Texas Prairie Lands, Ltd's Prior Lien Notes, guaranteed a return of $375.000 plus six percent interest to the shareholders of Prairie Lands Trust, Ltd., assigned its accounts receivable and transferred to it a portion of its physical equipment. In consideration therefor, Prairie Lands Trust, Ltd. agreed to carry out certain of petitioner's commitments and obligations, including the payment of the $100,000 note. Prairie Lands Trust Ltd. then borrowed a sum with which to *168 perform its agreement and, as security therefor, pledged the subscriptions for its entire beneficial interest which was divided into 4,250 shares. The subscribers were required to pay this loan and the shares were, thereupon, issued to them. In 1919 a plan was conceived envisaging the reorganization of the entire enterprise. This plan was incorporated in a "Reorganization Agreement" dated December 1, 1919, and executed by the three reorganization managers, two of whom were also trustees of petitioner. Among the provisions of the agreement was the following: (e) The Staked Plains Trust Limited shall make one issue of Liquidation Certificates (Class A) and one issue of Liquidation Rights (Class B) and shall provide in effect that, the certificates of Class A shall be paid in full both principal and interest before any payments in respect of the liquidation rights (Class B) and that the liquidation rights (Class B) shall be redeemed in full with interest before any payments shall be made in respect of the shares of the Staked Plains Trust Limited. The plan of reorganization was made known to the holders of the bonds, notes and certificates of Texas Prairie Lands, Ltd. and *169 the shareholders of Prairie Lands Trust, Ltd. by means of a printed notice. In connection with this plan, petitioner's trustees met on December 11, 1919, and adopted certain resolutions and records. They were reduced to writing and signed by the trustees. Included therein was the following: And Whereas the proposed reorganization is set forth in the agreement a copy of which appears at the end of these records and immediately following page 38 of this record book Resolved that the Staked Plains Trust Limited hereby accepts and agrees to the plan of reorganization set forth in the said reorganization agreement and the trustees and officers of the said trust are hereby authorized to sign all deeds and instruments and do all things necessary or expedient in order to carry out the said plan and agreement of reorganization and to comply with all directions of the Reorganization Managers therein named Resolved to authorize an issue of Liquidation Certificates (Class A) in the principal sum of $625,000 in the form contained in Schedule A annexed to the said reorganization agreement Resolved to authorize an issue of Liquidation Rights (Class B) to the number of 4,250 *170 and to issue certificates representing the same in the form contained in Schedule A annexed to the said reorganization agreement Thereafter, the reorganization was effectuated in accordance with the plan. Prairie Lands Trust, Ltd. retransferred to petitioner all remaining assets previously received and all bonds and profit sharing certificates of Texas Prairie Lands, Ltd. were retired as were the shares of Prairie Lands Trust, Ltd. To the former holders of Prior Lien Notes and Class A Profit Sharing Certificates were issued petitioner's Liquidation Certificates (Class A) in the aggregate amount of $625,000, such certificates being in words and figures as follows: Liquidation Certificate (Class A) This is to certify that the registered holder hereof is entitled to receive from time to time payments aggregating $ with interest thereon at the rate of (7 per cent per annum from 1st July 1918 or) (5 per cent per annum from 1st January 1923) funds of Staked Plains Trust Limited as and when such payment shall be authorized by the Trustees of the said trust and that the total amount above mentioned including both principal and interest shall be paid before any payments shall be made *171 either from income or distribution of capital by the Trustees in respect of the liquidation rights or the shares of the said Trust This liquidation certificate is one of a series aggregating $625,000 in amount of which $500,000 carry interest at the rate of 7 per cent per annum from 1st July 1918 and $125,000 carry interest at the rate of 5 per cent per annum from 1st January 1923. All payments upon or in respect of the said series shall be made equally and proportionately upon all certificates thereof Payments shall be made only upon presentation of this certificate to the Old Colony Trust Company in Boston or to its representative in New York or Lodon for proper notation hereon. This certificate is transferable only by written assignment noted on the books of the Old Colony Trust Company in Boston or of its representative in London and endorsed hereon IN WITNESS WHEREOF the said Staked Plains Trust Limited has caused this certificate to be duly signed in its name by the said Old Colony Trust Company as its agent this For the STAKED PLAINS TRUST Limited OLD COLONY TRUST COMPANY, Agent By Vice-President To the former holders of shares in Prairie Lands Trust, *172 Ltd. were issued petitioner's Liquidation Rights (Class B), the liquidation rights being divided in the same proportion as were the shares. These certificates were in words and figures as follows: Liquidation Rights Certificate (Class B) This is to certify that the registered holder hereof is entitled to liquidation rights of the Staked Plains Trust Limited. The said rights are redeemable by payments to be made out of the funds of the said trust from time to time when and as authorized by the Trustees of the said trust for the total sum of $160 plus interest at the rate of 7 per cent per annum from 1st January 1920 for each right. The liquidation rights represented by this certificate are part of a total number amounting but limited to 4,250 liquidation rights all of which are similar and equal All payments in respect of the said liquidation rights shall be made equally and proportionately upon all the said series. No payments shall be made thereon until after the total amount of Liquidation Certificates (Class A) of the said trust aggregating $625,000 and interest shall have been paid. No payments in liquidation or otherwise shall be made in respect of the shares of the *173 said trust until all of the liquidation rights shall have been redeemed at and for the amounts above stated. Payments shall be made only upon presentation of this certificate to the Old Colony Trust Company in Boston or to its representatives in New York or London for proper notation thereof. The liquidation rights represented by this certificate are transferable only by written assignment noted on the books of the Old Colony Trust Company in Boston or its representatives in London and endorsed hereon IN WITNESS WHEREOF the said Staked Plains Trust Limited has caused this certificate to be duly signed in its name by the said Old Colony Trust Company as its agent this For the STAKED PLAINS TRUST LIMITED OLD COLONY TRUST COMPANY. Agent By Petitioner's 35,000 shares were divided among the former holders of Texas Prairie Lands, Ltd.'s First Mortgage Bonds at the rate of seven shares for each bond. Each former bondholder was also entitled to obtain Liquidation Rights (Class B) at a price of $110 plus interest, the subscription being limited to 85/100 of one right for each [*] 100 bond. Petitioner has since operated and continues to operate the properties under the *174 agreement of December 1, 1919. No change has been made in the terms of the trust agreement by which petitioner was formed or in the rights and interests of the parties acquired pursuant to such agreement of December 1, 1919. By means of several partial payments, the principal amount called for under the Liquidation Certificates (Class A) was paid by August 31, 1930, petitioner, in the meantime, having accrued and deducted on its tax returns the so-called interest on such certificates in a total amount of $289,175.12. In 1937 $72,293.78 of this previously accrued sum was paid the holders of such certificates leaving $202,422.58 the balance due as of December 31, 1937. All such payments were made partly from receipts from land sales and partly from income arising from operations. Through 1937 no payment of any kind had been made to the holders of the Liquidation Rights (Class B). From its formation to January 1, 1937, petitioner had sustained net operating losses of approximately $1,800,000. Its adjusted net income for 1937 was $39,330.76. At the end of 1937 petitioner owned 46,100.15 acres of land in various stages of development with its value per acre ranging from $29 to $64. *175 The book value of improvements at that time was $297,167.67. Petitioner accrued interest on the Liquidation Rights (Class B) for the year 1937 of $29,750 and in its income tax return for that year deducted the amount of such accrual from gross income. Respondent disallowed the deduction. It is stipulated that for the purposes of this proceeding petitioner is to be considered an association properly taxable as a corporation. Opinion The first two questions involve the nature of the "interest" payments in respect of petitioner's so-called Liquidation Certificates (Class A) and Liquidation Rights (Class B). Petitioner contends that $29,750 accrued on its books in 1937 as interest on Liquidation Rights (Class B) is deductible under authority of section 23 (b) of the Revenue Act of 1936 [1] or, in the alternative, that a dividends paid credit should be allowed since $72,293.78 in "interest" was distributed in the taxable year to the holders of Liquidation Certificates (Class A). In short, it is petitioner's position that the two issues of certificates must be treated similarly; that in both cases the payments are either interest or dividends within the meaning of the revenue act. The *176 legal effect of the "interest" payments called for by each issue must depend upon the circumstances relating to that issue alone. Because payments under one class may be denoted dividends, it does not follow that payments under the other are also dividends. The question of whether payments called for under the terms of a corporate certificate are interest on an indebtedness or dividends on an investment has been an issue in numerous decided cases. See ; ; , *177 and cases cited therein. Such authorities are not of great help however, since the question is one of fact and the facts in each case are so variant as to make almost every decision distinguishable on some ground. Moreover, distinguishing criteria held significant in other situations are not necessarily determinative here because of the singular character and purpose of the instant entity. Petitioner, though treated as a corporation for the purpose of this proceeding, is a trust and, consequently, the form, nature and incidents appertaining to its certificate do not approximate those of analogous corporate issues. Moreover, as opposed to the usual business enterprise which contemplates an indefinite continuation of operations, petitioner was formed for the very purpose of liquidating its assets and this plan was promoted by the reorganization agreement. This purpose is reflected in the form, terminology and rights granted in certificates, and particularly those issued pursuant to the reorganization. Hence, factors such as the existence of maturity dates, which in a less unique situation might be indicative of the relationship established between the issuer and certificate holder, *178 here are of little probative value. The ultimate fact to be found with regard to the status of the holders of the two classes of certificates here involved is, of course, whether such holders are, in fact, creditors of petitioner with a right to interest on their loan or simply the owners of a beneficial interest thereof hoping for a return on their investment. This determination must be made with an eye to the whole record. Of real significance is the intent of the parties as evidenced by their conduct, statements and the circumstances attending the issuance of the certificates, with all reasonable inference to be drawn from these acts and circumstances. ; . The evidence here shows that all the endeavors of the interested parties were directed toward the irrigation, development, improvement, division and resale of a large tract of Texas land. The tremendous cost of the development plus the dearth of buyers resulted in *179 a need for working capital beyond that which had been anticipated, and, hence, brought about certain financial proceedings. Among them was one which enabled petitioner to obtain $500,000 in exchange for Prior Lien Notes secured by a mortgage on petitioner's assets. These notes, originally issued by Texas Prairie Lands, Ltd., were interest bearing and the holders were unquestionably superior lien creditors. To these creditors were also issued Class A-Profit Sharing Certificates entitling them to receive an additional $125,000 before any payments of principal and interest were made on an existing [*] 500,000 bonded indebtedness. A further effort to continue the original enterprise resulted in the formation of a second trust, Prairie Lands Trust, Ltd., which took over a portion of petitioner's assets and obligationsc This trust issued 4,250 beneficial shares and the holders thereof comprised another class of parties in interest, beneficial owners of Prairie Lands Trust, Ltd. Petitioner's guaranty that the assets transferred to Prairie Lands Trust, Ltd. would enable it to redistribute $375,000 to its shareholders did not, under the evidence here, make these shareholders petitioner's creditors. *180 The reorganization plan adopted in 1919 envisaged a merger of the assets owned by petitioner and Prairie Lands Trust, Ltd., as well as the retirement of securities issued by Texas Prairie Lands, Ltd. Thereafter, all parties were to hold certificates issued by petitioner. On the other hand, existing priorities as between the holders were to be unchanged. Pursuant to this agreement and a subsequent resolution of petitioner's trustees, the two instant issues were authorized in the form which they respectively possess. The so-called Liquidation Certificates (Class A) were exchanged for Prior Lien Notes and Class A-Profit Sharing Certificates while the so-called Liquidation Rights (Class B) were issued to Prairie Lands Trust, Ltd. in exchange for its assets and by it distributed to its shareholders. The circumstance that the two types of certificates, though issued simultaneously and as a part of a sigle plan, differed substantially in form is evidence of an intent that they should represent different types of obligations. This is supported by the fact that the Liquidation Certificates (Class A) replaced what previously had been evidences of debt whereas the Liquidation Rights (Class *181 B) were issued to the former shareholders in the trust merged with petitioner in exchange for their trust shares. The combination of these circumstances suggests the intent that the holders of the Class A Certificates should continue as creditors while the holders of Class B Rights should have only a beneficial interest in the trust returns. In form the Liquidation Certificates (Class A) more nearly approximate an interest bearing note than a preferred share in the trust whereas just the reverse is true of the Liquidation Rights (Class B). While form is not conclusive, still the parties must be presumed to know the differences between bonds and shares and when they adopt a form of certificate incorporating elements of one or the other, their acts must be given the intended effect, unless there is evidence that the certificates did not recite what they were intended to mean. . Here the intent and form are in accord. An examination of the Liquidation Certificate (Class A) discloses that the holder is entitled to receive out of petitioner's funds a specific amount with interest at a given rate per year and that *182 this amount shall be paid before any payments shall be made either from income or distribution of capital in respect of the Liquidation Rights (Class B) or the shares of the trust. A note need not be in any special form. These words sufficiently show a promise to pay a sum certain plus interest in all events and regardless of the character of the funds from which either principal or interest is to be paid. True, no maturity date is fixed. However, since available funds depended upon the speed with which the sale of the farms could be accomplished, we do not consider this to have conditioned the payment. The certificate holders could not have obtained payments faster than cash was received regardless of the maturity date. On the other hand, doubtless they could have forced payment should none have been forthcoming within a reasonable period after cash was realized from the assets. Moreover, consistent with an indebtedness, the entire issue of the Liquidation Certificates (Class A) aggregated a sum certain, $625,000, and this figure was identical with the principal amount of the obligations which this issue replaced. Conversely, the so-called Liquidation Rights (Class B) did not purport *183 to represent an obligation in a specific sum. On the contrary, this issue was divided into 4,250 similar and equal "rights". The word "right" denotes an interest or title in an object of property and, thus, the very terminology of this issue displays the intent that its holders should share in the ownership of the trust. Ownership, obviously, is incompatible with the relationship of creditor-debtor. ; . Furthermore, the certificates did not call for the payment of a sum certain but simply provided that the rights were redeemable at the option of petitioner's trustees. The reciation of the amount for which each right may be redeemed merely defined the maximum monetary value of the holder's beneficial interest and this is consonant with the usual corporate preferred stock which generally limits participation but places it ahead of common stockholders. Moreover, the so-called "interest" payments were not due or payable annually, but merely increased the value of the holder's right as and when it was redeemed. Not only could no payments *184 whatever be made with respect to these certificates until the $625,000 and interest, represented by the Liquidation Certificates (Class A), were paid, but even thereafter the so-called "interest" did not become due. This is inconsistent with the concept of debt. The accrued amount more nearly approximates an anticipated dividend on preferred stock. ; ; , (on appeal, CCA-3rd).[1]
This conclusion is substantiated by a resolution appearing in petitioner's "Records of Trustees adopted 11th December 1919". We quote therefrom: And Whereas at the time of the formation of the Prairie Lands Trust Limited it was intended that every holder of bonds of Texas Prairie Lands Limited should have an equal opportunity to subscribe to and become interested in the Prairie Lands Trust Limited on the same terms as all other subscribers but during the war it was found *185 impossible to communicate with all of the bondholders and it was also impossible for many of those with whom communications were held to avail themselves of the opportunity on account of restrictive laws in foreign countries. And Whereas it is now desired to afford all such bondholders the opportunity to place themselves in the same position as they would have occupied if they had subscribed to their proportionate interest in Prairie Lands Trust Limited. Now Therefore in order to accomplish the foregoing objects the following resolutions are hereby adopted: * * * * *
Resolved that as a part of the consideration of the foregoing purchase and in order to give the holders of all the 5000 first mortgage bonds of the Texas Prairie Lands Limited (of the par value of [*] 100 each) an opportunity to acquire the said 4,250 liquidation rights on an equal and proportionate basis at a price equal to cost to the subscribers to Prairie Lands Trust Limited the trustees of the last mentioned trust shall agree to offer through the Reorganization Managers under the plan or reorganization of Texas Prairie Lands Limited in such manner and under such conditions as the said Reorganization *186 Managers may fix to each of the holders of first mortgage bonds of the said company an opportunity to purchase eight-five one hundredths (85/100) of one liquidation right for each bond of [*] 100 held by such bondholders at and for the price of $110 plus interest at the rate of 6 per cent. per annum from 1st January 1920 in cash for each liquidation right. No such opportunity was presented with respect to Liquidation Certificates (Class A). It is apparent that a principal purpose for the formation of Prairie Lands Trust, Ltd., and the subsequent issuance of Liquidation Rights (Class B), was to enable all the original bondholders, if they so chose, to enter into a joint venture with a view to minimizing the loss which, from all appearances, they were bound to sustain. The fact that these parties were permitted to subscribe for the rights; that they were required to pay only $110 for certificates redeemable at a minimum of $160; that advantages superior to those of the holders of the common shares were granted, and that all rights were subordinated to the payment of principal and interest under the Liquidation Certificates (Class A), show that the Liquidation Rights (Class B) were *187 regarded as preferred shares in the enterprise and not as evidence of an absolute debt. The holders thereof were adventurers in a business and they were no less adventurers because their hope was recoupment rather than profit. Considering the entire record we are of the opinion and it is, therefore, held that the accrual account in respect of the socalled Liquidation Rights (Class B) does not represent interest due on an indebtedness. Respondent properly disallowed such a deduction from 1937 income. We hold, further, that the so-called Liquidation Certificates (Class A) did represent an indebtednes of petitioner and that the amounts distributed to the holders thereof in 1937, accordingly, were not dividends on an investment. In view of these conclusions it becomes unnecessary to discuss alternate contentions urged by respondent respecting the non-deductibility of both petitioner's $29,750 acrual and its $72,293.78 payment. The next issue is whether petitioner is entitled to a credit under section 26(c)(1) of the Revenue Act of 1936 [2] by reason of a provision of a written contract executed prior to May 1, 1936, *188 expressly dealing with and restricting the payment of dividends. Petitioner contends that the reorganization agreement of December 1, 1919, under which it has since operated, constitutes such a contract. Respondent, in his brief, does not allude to the reorganization agreement or petitioner's argument in that connection. Rather, he reasserts his position that the Liquidation Certificates (Class A) and Liquidation Rights (Class B), which contained restrictive language, are not debts. Consequently, he urges, they are not contracts within the meaning of section 26(c)(1). Obviously, this contention is weakened by our conclusion that the Liquidation Certificates (Class A) do represent an indebtedness. *189 By 1919 three entities and numerous individuals were interested in the enterprise involving the development and sale of the Texas Land first acquired by Texas Prairie Lands, Ltd. In addition to this corporation, petitioner and Prairie Lands Trust, Ltd. were concerned with the original purpose. Moreover, several classes of note, bond and shareholders had a stake in the undertaking of one sort or another. The project was so burdened with financial obligations, as to make an orderly liquidation of the assets in accordance with the original purpose virtually an impossibility. To remedy this difficulty a plan was proposed, such plan being set forth in a written reorganization agreement. In principle it contemplated the surrender of pre-existing securities and shares in exchange for certain new issues to be authorized by petitioner. The palpable intention was, however, that preferences then existing between the holders of the several kinds of securities should not be altered. It was provided that the Prior Lien Notes should be retired in exchange for Liquidation Certificates (Class A) and that, "The Staked Plains Trust Limited shall make one issue of Liquidation Certificates (Class *190 A) and one issue of Liquidation Rights (Class B) and shall provide in effect that the certificates of Class A shall be paid in full both principal and interest before any payments in respect of the liquidation rights (Class B) * * *." The Liquidation Rights (Class B) are in the nature of preferred shares representing an investment in the enterprise as we have shown above. Hence it is apparent that this provision expressly deals with the payment of dividends. Furthermore, annexed to the agreement was a proposed form of the Liquidation Certificates (Class A), such form containing a restriction upon payments in respect of the liquidation rights or petitioner's shares until the full amount of principal and interest was paid on the certificates. The plan so set forth in the reorganization agreement was specifically accepted and agreed to by resolution of petitioner's trustees which incorporated therein a copy of the agreement and which was adopted December 11, 1919, reduced to writing and by them signed. Moreover, it was also resolved that the Liquidation Certificates (Class A) be issued in the form suggested in the schedule to the reorganization agreement. The original trust indenture *191 reposed in the trustees the power to act for the trust. The adoption of the agreement by written resolution signed by them was the adoption of such by petitioner. Pursuant thereto the Liquidation Certificates (Class A) were issued and, as is stipulated by the parties, petitioner since has operated under the agreement at all times. The written acceptance and adoption of the agreement signed by the trustees and incorporating therein the agreement constituted a written contract executed by petitioner. Cf. . As we have pointed out, the agreement contained a provision expressly dealing with the payment of dividends and this, of course, is included in the ratification. The contract was executed prior to May 1, 1936. Hence, the petitioner was subject to a contract restricting the payment of dividends within the meaning of section 26 (c) (1). Petitioner's contention may be sustained by reason of another contract, the Liquidation Certificates (Class A). For reasons previously set forth we concluded that these certificates were, in fact, notes representing debt. Unquestionably such note is a contract. Williston *192 on Contracts, [*] 7. See . Cf. , certiorari denied , (42 P-H [*] 63036): , certiorari denied . Each Liquidation Certificate (Class A) contained a clause expressly restricting the payment of dividends until the face amount thereof plus interest was paid and each was signed for the petitioner by its agent. Petitioner's trustees were authorized to act through agents. Such certificates were also contracts falling within section 26 (c) (1). During the year 1937 there remained a balance due in respect of Liquidation Certificates (Class A). Petitioner, in compliance with its agreement, made no payments on its Liquidation Rights (Class B) or on its original shares. We hold that petitioner, in computing its undistributed profits tax for 1937, is entitled to a credit in the full amount of its adjusted net income by reason of a contract restricting the payment of *193 dividends within the meaning of section 26 (c) (1), supra. ; . The application of this credit would relieve petitioner of liability for tax on undistributed profits and respondent erred in not so determining. In view of this conclusion it becomes unnecessary to consider whether a credit might equally be available under the provisions of section 501 (a) (2) and (3) of the Revenue Act of 1942 amending section 26 of the Revenue Act of 1936. Decision will be entered under Rule 50. Footnotes
1. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: * * * * *
(b) Interest. - All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this title.↩
1. Subsequently affirmed by CCA-3, .↩
2. SEC. 26. CREDITS OF CORPORATIONS. In the case of a corporation the following credits shall be allowed to the extent provided in the various sections imposing tax - * * * * *
(c) Contracts Restricting Payment of Dividends. - (1) Prohibition on Payment of Dividends. - An amount equal to the excess of the adjusted net income over the aggregate of the amounts which can be distributed within the taxable year as dividends without violating a provision of a written contract executed by the corporation prior to May 1, 1936, which provision expressly deals with the payment of dividends. If a corporation would be entitled to a credit under this paragraph because of a contract provision and also to one or more credits because of other contract provisions, only the largest of such credits shall be allowed, and for such purpose if two or more credits are equal in amount only one shall be taken into account.↩